IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,    )
                                  )
     Plaintiff,           )
                                  )
v.                            )       No. 2:16-cr-20094-SHM
                                  )
NICKEY ARDD,            )
                                  )
     Defendant.          )

---

**ORDER**

---

Before the Court is Defendant Nickey Ardd's Motion to Suppress Evidence, filed on September 22, 2016. (Mot. to Suppress Evidence & Mem. in Supp., ECF No. 23 ("Mot. to Suppress").) The United States (the "Government") responded in opposition on October 20, 2016. (Gov't's Resp. to Mot. to Suppress, ECF No. 28 ("Resp. to Mot. to Suppress").) On March 2, 2017, Magistrate Judge Tu M. Pham issued an Amended Report and Recommendation recommending that the Motion to Suppress be denied. (ECF No. 54 ("Report").)

On March 16, 2017, Ardd filed objections to the Report. (Objs. to Am. R. & R., ECF No. 61 ("Objs.").) The Government filed a response to the Objections on March 29, 2017. (Gov't's Resp. to Objs. to Am. R. & R., ECF No. 62 ("Resp. to Objs.").)

The Court ADOPTS Sections I.A, I.C, II.A.2, II.B, and II.C of the Report. The Court ADOPTS Section I.B of the Report to the extent consistent with the discussion in Section III.B below. The Court ADOPTS Section II.A.1 of the Report to the extent consistent with the discussion in Section III.C below. The Motion to Suppress is DENIED.

## I. BACKGROUND

On April 27, 2016, a federal grand jury returned a five-count indictment against Ardd. (Indictment, ECF No. 1.) Ardd was charged with (1) one count of possessing, with intent to distribute, a detectable amount of cocaine, in violation of 18 U.S.C. § 841(a)(1) ("Count 1"); (2) one count of knowingly using and carrying a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count 2"); (3) two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ("Count 3" and "Count 4"); and (4) one count of possessing a firearm from which the serial number had been removed, obliterated, or altered, in violation of 18 U.S.C. § 922(k).

On September 22, 2016, Ardd filed the Motion to Suppress. Ardd argues that there was not probable cause to arrest him, that there was not probable cause to search his residence, and that his postarrest statement should be suppressed because he had not been informed of his Miranda rights. (See generally

Mot. to Suppress 3–7.)  The Court referred the Motion to Suppress to Magistrate Judge Pham.  (Order of Reference, ECF No. 24.)  On October 20, 2016, the Government filed its Response to Motion to Suppress.

On November 15, 2016, the Magistrate Judge conducted a hearing on the Motion to Suppress.  (Minute Entry, ECF No. 37.) The Government presented testimony from three witnesses: Detective William Acred, Detective Johnathon Knowlton, and Detective Harold Tellez.[1]  (Id.; Hr'g Tr. 26–165.)  During the hearing, Ardd requested permission to file a supplemental memorandum in support of the Motion to Suppress.  (Hr'g Tr. 165–66.)  The Court granted that motion.  (Id. at 168.)  Ardd filed the Supplemental Memorandum on January 3, 2017.  (Suppl. Mem. in Supp. of Mot. to Suppress Evidence, ECF No. 40 ("Suppl. Mem.").)  On January 10, 2017, the Government filed a Response to Defendant's Memorandum in Support of Motion to Suppress.  (ECF No. 42 ("Resp. to Suppl. Mem.").)

On March 1, 2017, the Magistrate Judge entered his Report and Recommendation.  (ECF No. 53.)  On March 2, 2017, the Magistrate Judge entered an Amended Report and Recommendation that made minor changes to the original.  (See generally Report.)  On

---

[1] The hearing transcript suggests that Tellez's last name is spelled "Telle."  (Hr'g Tr. 119, ECF No. 39.)  Several record documents suggest that "Tellez" is the correct spelling.  (See, e.g., Hr'g Tr. Ex. 8 ("Search Warrant Aff."); Hr'g Tr. Ex. 9 ("Compl. Aff.")).  The Court will use "Tellez."

March 16, 2017, Ardd filed his Objections.  On March 29, 2017, the Government filed its Response to the Objections.

## II.  STANDARDS

A district court has the authority to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion."  28 U.S.C. § 636(b)(1)(B).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

The district court has appellate jurisdiction over any decisions the magistrate judge issues pursuant to such a referral. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).  The standard of review the district court applies depends on the nature of the matter considered by the magistrate judge.  "It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."  United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citing 28 U.S.C. § 636(b)(1); United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001)); see also United States v. Ickes, No. 1:15-CR-00004-GNS-2, 2017 WL 1017120, at *1 (W.D. Ky. Mar. 15, 2017) (quoting Curtis, 237 F.3d at 603).

The Court need not review –– under a <u>de novo</u> or any other standard –– those aspects of a report and recommendation to which no objection is made. <u>Thomas v. Arn</u>, 474 U.S. 140, 150–52 (1985); <u>Harris v. Ocwen Loan Servicing, LLC</u>, No. 2:16-CV-02224-SHM-CGC, 2017 WL 899943, at *3 (W.D. Tenn. Mar. 7, 2017) (citing <u>Arn</u>). Objections to a magistrate's report "must be specific in order to focus the court's attention on the issues in dispute," and failure to raise an issue specifically leads to waiver. <u>Gant v. Bradley</u>, No. 98-5069, 1999 WL 282643, at *3 (6th Cir. Apr. 30, 1999) (citing <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995); <u>Mira v. Marshall</u>, 806 F.2d 636, 637-38 (6th Cir. 1986)).

## III. ANALYSIS

### A. Adoptions Based on Failures to Object

Ardd does not object to various parts of the Report.

The section titled "Proposed Findings of Fact" (Section I of the Report) has three subsections. (Report 2–9.) Ardd objects to certain findings of fact in Section I.B. (Objs. 1–3.) Section I.B details "the events of June 16, 2015" –– the "reverse-buy operation" leading to Ardd's arrest, the search of Ardd's residence, and Ardd's questioning after his arrest. (Report 5–8.) Ardd does not object to the findings of fact in Sections I.A and I.C of the Report. The Court ADOPTS Sections I.A

and I.C of the Report. <u>Arn</u>, 474 U.S. at 150–52; <u>Harris</u>, 2017 WL 899943, at *3.

The Report's section titled "Proposed Conclusions of Law" (Section II of the Report) has three subsections. (Report 9–25.) Ardd objects to certain conclusions of law in Section II.A. (Objs. 3–7.) Section II.A concludes that (1) the search of Ardd's residence was supported by probable cause, and (2) even if the search were not supported by probable cause, the good-faith exception to the probable-cause requirement would apply. (Report 9–21.)

Ardd states a conclusory objection to Sections II.B and II.C of the Report. (Objs. 7–8.) Section II.B addresses the search of Ardd incident to his arrest. (Report 22.) It concludes that "the officers had ample probable cause to arrest Ardd . . . , and because his arrest was lawful, the officers could conduct a search of Ardd's person without running afoul of the Fourth Amendment." (<u>Id.</u>) Section II.C addresses Ardd's postarrest statements to officers. (<u>Id.</u> at 22–25.) It concludes that "the government has met its burden of showing that Ardd knowingly and voluntarily waived his <u>Miranda</u> rights and that his post-arrest statement was made voluntarily and free of police coercion." (<u>Id.</u> at 24.)

Ardd's objection to Sections II.B and II.C of the Report is stated in one sentence: "For the reasons previously argued in

the [Motion to Suppress] and the [Supplemental Memorandum], this Court should not adopt the [Report] and should suppress both the [postarrest] statement and the evidence obtained from the search of Mr. Ardd."[2] That sentence is insufficient to state an objection to the Magistrate Judge's Report. It does not isolate specific purported errors in the Report. The Motion to Suppress and the Supplemental Memorandum were filed before the Report. Neither of them could or does isolate specific errors in the Report. "It is well-established that the failure to object to any portion of a magistrate judge's report results in a waiver of both district-court and appellate review of that portion." McClain v. Kelly, 631 F. App'x 422, 441 (6th Cir. 2015); see also Gant, 1999 WL 282643, at *3.

Ardd's objections to Sections II.B and II.C of the Report have been waived. The Court ADOPTS Sections II.B and II.C of the Report.

**B.  Objections to Section I.B of the Report**

The first section of Ardd's objections asserts that the Report is "unreliable, inaccurate and should not be adopted." (Report 1.) Ardd asserts that the Report "contain[s] multiple errors in its proposed findings of fact." (Id. at 1–2.) As noted above, the errors Ardd cites refer to findings in Section

---

[2] The Introduction to the Objections also states, "The defense hereby incorporates all arguments previously made in this matter and supplements them as appropriate." (Objs. 1.)

I.B of the Report. Ardd cites two errors in the proposed find-ings of fact.[3] Both concern details of the reverse-buy operation that led to Ardd's arrest.

First, Ardd objects that the Report incorrectly finds that, during the reverse-buy operation leading to Ardd's arrest, "Ardd showed [Tellez] the money." (Objs. 2; see also Report 5.) Ardd argues that "there was another individual in the car and that Detective Tellez testified that 'both of them, they were holding money in their laps and were counting it in front of me.'" (Objs. 2 (quoting Hr'g Tr. 125).) The Government does not dis-pute that the Report contains this factual error. (Resp. to Objs. 2.)

Tellez's testimony was that both Ardd and his companion showed money to Tellez. (Hr'g Tr. 125.) It is not entirely clear that the Report gets this wrong. To the extent the Re-port's statement, "Ardd showed the detective the money," could be read to suggest that only Ardd showed Tellez money during the reverse-buy operation, the Court SUSTAINS Ardd's objection and finds that both Ardd and his companion showed Tellez money dur-

---

[3] The first section of Ardd's objections contends that the Magis-trate Judge paid insufficient attention to Ardd's argument ad-dressing representations in the Search Warrant Affidavit about confidential informants. (Id. at 2-3.) The Court interprets this as a challenge to the Report's legal conclusions, not the Report's findings of fact. The Court addresses the confidential-informant argument below. (See Section III.C in-fra.)

ing the operation.  Nothing of legal significance turns on this point.

Second, Ardd objects that the Report incorrectly states that Tellez "'took the cocaine out of [a storage] container and handed it to Ardd.'"  (Objs. 2 (quoting Report 6).)  Ardd argues that Tellez testified that the relevant cocaine was in a plastic bag within a Styrofoam container within a second plastic bag. (Id. (citing Hr'g Tr. 127, 140, 148–50).)  According to Tellez's testimony, Ardd contends, Tellez never took the cocaine "out of [a] container" and handed it to Ardd.  The Government does not dispute that the Report contains this factual error.  (Resp. to Objs. 2.)

The Court agrees that Tellez's testimony was that Tellez did not hand Ardd the cocaine itself, but a plastic bag containing a Styrofoam container that in turn contained a plastic bag containing cocaine.  (Hr'g Tr. 148–49.)  To the extent the Report suggests otherwise, the Court SUSTAINS Ardd's objection and finds that Tellez handed Ardd a plastic bag containing a Styrofoam container enclosing a plastic bag with cocaine.  Nothing of legal significance turns on this point.

Ardd specifies no other factual errors in the Report.  (See generally Objs.)  It is incumbent on him to assert any purported errors.  Arn, 474 U.S. at 150; Harris, 2017 WL 899943, at *3. The Court ADOPTS Section I.B of the Report as modified.

**C.   Objections to Section II.A.1 of the Report**

Section II.A.1 of the Report concludes:

> Considering the totality of the circumstances, . . . Detective Tellez's affidavit contained sufficient specific, reliable information to reasonably establish that Ardd was engaged in ongoing drug trafficking activity, that the [residence at XXXX Castleman in Memphis, TN] was in fact Ardd's residence, and that there was probable cause to believe evidence of drug trafficking activity would be found inside the residence once the triggering condition occurred.

(Report 19.)

The Court understands Ardd to make two objections to the Magistrate Judge's probable-cause finding. First, Ardd argues that Tellez's testimony at the hearing was inconsistent with the material presented in the Search Warrant Affidavit. (Objs. 3.) Ardd asserts that those inconsistencies "furthered the argument that there was not probable cause to support" the Search Warrant Affidavit. (Id.) Second, Ardd argues the Report pays insufficient attention to the Sixth Circuit's decision in United States v. Brown, 828 F.3d 375 (6th Cir. 2016). (Id. at 4–6.)

Section II.A.1 of the Report begins by reciting the relevant Fourth Amendment standards:

> The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." To determine if probable cause exists, the task of the issuing judicial of-

ficer is "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." "The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" Search warrant affidavits must be judged based on the totality of the circumstances, rather than line-by-line scrutiny. Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit.

The search warrant issued to Detective Tellez authorized officers to search Ardd's residence only if a specific condition was met, that condition being Detective Tellez's delivery of nine ounces of cocaine to Ardd and Ardd's subsequent arrest for attempting to possess that cocaine. This type of search warrant is known as an "anticipatory warrant." An anticipatory warrant is "a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." "Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time -- a so-called 'triggering condition.'" The triggering condition for an anticipatory warrant must be "explicit, clear, and narrowly drawn," but should also be read in a commonsense rather than a hypertechnical fashion. Moreover, "the Fourth Amendment does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself[.]"

In [United States v. Grubbs, 547 U.S. 90 (2006)] the Supreme Court articulated "two prerequisites of probability" an anticipa-

> tory warrant must satisfy in order to comply
> with the Fourth Amendment: "It must be true
> not only that <u>if</u> the triggering condition
> occurs 'there is a fair probability that
> contraband or evidence of a crime will be
> found in a particular place,' but also that
> there is probable cause to believe the trig-
> gering condition <u>will occur</u>."  The search
> warrant affidavit must provide the issuing
> judicial officer "with sufficient infor-
> mation to evaluate both aspects of the prob-
> able-cause determination."

(Report 9–12 (citations omitted).)  Ardd does not object to the standards stated in the Report.

Ardd's confidential-informant argument is that the Search Warrant Affidavit contains incomplete information.  (Objs. 2–3.) The Sixth Circuit recently discussed the standards for assessing a search warrant that contains false statements or that omits relevant material:

> [T]here is "a presumption of validity with
> respect to the affidavit supporting the
> search warrant."  But, "a search warrant is
> invalid when the supporting affidavit con-
> tains a statement, necessary to the finding
> of probable cause, that is later demon-
> strated to be false and included by an affi-
> ant knowingly and intentionally, or with a
> reckless disregard for the truth."  [<u>Franks
> v. Delaware</u>, 438 U.S. 154 (1978)] also ap-
> plies to cases where an affiant intentional-
> ly omitted information in an affidavit,
> which is critical to the probable cause de-
> termination.  A defendant may request an ev-
> identiary <u>Franks</u> hearing if he "raises a
> substantial question as to whether the affi-
> davit supporting the search warrant con-
> tained materially false information."  This
> requires making a "substantial preliminary
> showing" of knowing or reckless falsity.  If

> the defendant is able to show deliberate
> falsity or reckless disregard for the truth,
> those portions of the affidavit are set
> aside, and the remaining content is analyzed
> to determine if it supports probable cause.
> Thus, the offending information must be es-
> sential to a probable cause finding. Inno-
> cent or negligent mistakes are not enough.

United States v. Stone, No. 15-5434, 2017 WL 218883, at *3 (6th Cir. Jan. 19, 2017) (citations omitted).

Three sentences in the Search Warrant Affidavit address a confidential informant. (Search Warrant Aff.) The affidavit states, "Detectives with the Organized Crime Unit received information from a reliable Confidential Informant (CI) about [Ardd] being involved in the sale and distribution of powder cocaine in the city of Memphis. The CI observed [Ardd] possessing, storing, and transporting both powder cocaine and crack cocaine in the past." (Id.) The affidavit also states that "[t]he [r]eliable Confidential Informant (CI) has provided information in the past that has led to over 5 [f]elony drug arrests and convictions and the seizure of over 5 kilograms of powder cocaine, over 10 pounds of marijuana and over $500,000 in [U.S.] currency." (Id.)

At the hearing, defense counsel cross-examined Tellez about an alleged discrepancy between the Search Warrant Affidavit and the Complaint Affidavit supporting Ardd's arrest. The Search Warrant Affidavit states that "[Ardd] has . . . contacted

[Tellez] by phone several times <u>for the past year</u> and has attempted to purchase kilograms of powder cocaine from [Tellez]."[4] (Search Warrant Aff. (emphasis added).)  The Complaint Affidavit states that Tellez "had been in contact with [Ardd] <u>for over six months</u> posing as a drug dealer."  (Compl. Aff. (emphasis added).)

Faced with the statements, Tellez testified that his interactions with Ardd involved two confidential informants.  (Hr'g Tr. 134-35.)  The first ("Informant 1") put Tellez in touch with Ardd about a year before Ardd's eventual arrest.  (<u>Id.</u>)  Tellez testified that Informant 1 had been at a club with Ardd and called Tellez after learning that Ardd and various associates possessed 3 kilograms of cocaine.  (<u>Id.</u> at 134.)  During that call, Informant 1 handed the telephone to Ardd, who then spoke with Tellez (who was posing as a drug dealer).  (<u>Id.</u> at 135-36.)  Informant 1 later gave Tellez a telephone number at which Ardd could be reached.  (<u>Id.</u> at 136.)  Tellez testified that, at some point after this call, "the investigation backed down because [Informant 1] went south" and Tellez "lost contact with [Informant 1]."  (<u>Id.</u>)

---

[4] The Search Warrant Affidavit refers to an undercover officer labelled "UC2860."  (<u>See generally</u> Search Warrant Aff.)  At the hearing, Tellez testified that he was undercover officer UC2860.  (<u>See, e.g.,</u> Report 4 n.1.)

Tellez testified that, after some time, he was "able to . . . introduce this other informant [Informant 2] using that number that [Informant 1] gave me." (Id.) That testimony is not entirely clear. The Court understands Tellez to mean that Informant 2 contacted Ardd using the telephone number Tellez had received from Informant 1, and Informant 2 then introduced Ardd to Tellez, who was posing as "a cocaine dealer from Arizona." (Id. at 121.) This led Tellez to interact personally with Ardd several times, starting about six months before Ardd's arrest. (Id. at 136.)

Tellez's investigation of Ardd employed two confidential informants (although the bulk of the work was done by Informant 2). The Search Warrant Affidavit refers only to one informant. (See generally Search Warrant Aff.) Tellez testified that the statement in the Search Warrant Affidavit discussing past information provided by the confidential informant referred to Informant 2. (Hr'g Tr. 139.) As to the statements that a confidential informant provided information that Ardd was involved in the sale and distribution of powder cocaine, and that a confidential informant observed Ardd possessing, storing, and transporting cocaine, Tellez testified that "the way I wrote it I guess you could refer to both." (Id. at 138; see also id. at 139.)

Ardd's objection is that this purported inconsistency —— that the Search Warrant Affidavit does not speak about both Informant 1 and Informant 2, but refers only to one confidential informant —— suggests that "there was not probable cause to support the affidavit." (Objs. 3.) Ardd's objection fails for three reasons.

First, to the extent Ardd claims that incorrect statements or omissions ground a finding that there was no probable cause for the search of Ardd's home, Ardd should have requested a <u>Franks</u> hearing. He has not done so (<u>see generally</u> Objs.), and did not do so before the Magistrate Judge (<u>see generally</u> Suppl. Mem.).

Second, even if Ardd had requested a <u>Franks</u> hearing, his request would have been denied. Ardd has made no showing of "deliberate falsity or reckless disregard for the truth." <u>Stone</u>, 2017 WL 218883, at *3 (citing <u>Franks</u>, 438 U.S. at 171–72). Ardd made no such showing to the Magistrate Judge. (Suppl. Mem. 9 ("There is no allegation that Detective Tellez was being untruthful or trying to mislead the [official who reviewed the Search Warrant Affidavit] . . . .").) At best, Ardd suggests an innocent or negligent mistake in the Search Warrant Affidavit. That is not enough to disturb the presumption of validity that attaches to the Affidavit. <u>Id.</u>

Third, even if Ardd had made a showing of deliberate falsity or reckless disregard for the truth, no Franks hearing would be necessary because the statements in the Search Warrant Affidavit referring to a confidential informant did not refer to Ardd's home.  (See generally Search Warrant Aff.)  The search of Ardd's home is the focus of Ardd's present objections.  (See generally Objs.)  Probable cause for that search did not hinge on statements made by a confidential informant.  Ardd's confidential-informant objection is OVERRULED.

Ardd's second objection to Section II.A.1 of the Report is that the Magistrate Judge "gave limited review" to the Sixth Circuit's decision in Brown.  (Id. at 4.)  Under Brown, Ardd argues, the Search Warrant Affidavit "is constitutionally insufficient."  (Id. at 6.)  The gravamen of this objection is that the connection between illegal activity and Ardd's home, as presented in the Search Warrant Affidavit, was insufficient to justify the search.

Ardd's Brown objection addresses only one of the two "prerequisites of probability" applicable to anticipatory warrants. Grubbs requires that an affidavit for an anticipatory warrant provide probable cause that (1) the triggering event will occur, and that (2) if the triggering event occurs, contraband or evidence of a crime will be found at a particular place.  547 U.S. at 96–97.  In the present case, the warrant's triggering event

was Ardd's arrest for attempting to acquire cocaine. (Search Warrant Affidavit.) The Report concludes that the Search Warrant Affidavit "contained sufficient information to establish probable cause to believe the triggering condition would occur." (Report 12; see generally id. at 12–13.) Ardd does not object to that conclusion. (See generally Objs.) The Court ADOPTS this portion of Section II.A.1 of the Report.

Ardd's objection addresses the second Grubbs prerequisite. Ardd contends the Search Warrant Affidavit lacked sufficient information to establish probable cause to believe that, if Ardd were arrested for attempting to acquire cocaine, contraband or evidence of a crime would be found at Ardd's residence. (Id. at 3–7.) Ardd cites passages in Brown addressing the inference that drug dealers keep evidence of their crimes at home:

> We have acknowledged that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." Thus, in some cases, we have permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence had been observed directly. We have never held, however, that a suspect's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." Rather, we have required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, we have required facts showing that the residence had been used in drug trafficking, such as an informant who observed drug deals or drug paraphernalia in or around the residence.

. . . .

> In sum, our cases teach, as a general mat-
> ter, that if the affidavit fails to include
> facts that directly connect the residence
> with the suspected drug dealing activity, or
> the evidence of this connection is unrelia-
> ble, it cannot be inferred that drugs will
> be found in the defendant's home -- even if
> the defendant is a known drug dealer.

828 F.3d at 383-84.

The Report cites Brown and quotes the second paragraph quoted above. (Report 15-16 & n.5) The Report observes that, in a footnote, Brown conceded that the Sixth Circuit "had previ-ously found the nexus sufficient in cases in which the affidavit did not contain any facts showing that the residence had been connected to drug dealing activity." (Id. at 16 (citing Brown, 828 F.3d at 383 n.2)). That footnote cited three cases: United States v. Gunter, 551 F.3d 472, 476-77 (6th Cir. 2009); United States v. Kenny, 505 F.3d 458, 461-62 (6th Cir. 2007); and Unit-ed States v. Miggins, 302 F.3d 384, 388 (6th Cir. 2002). Brown, 828 F.3d at 383 n.2. The Report reviews those cases and con-cludes that, "[c]onsidering the totality of the circumstanc-es, . . . [the Search Warrant Affidavit] contained sufficient specific, reliable information to reasonably establish that . . . there was probable cause to believe evidence of drug trafficking activity would be found inside the residence once the triggering condition occurred." (Report 16-19.)

The Court must correct one aspect of the Report. The _Brown_ footnote distinguished _Gunter_, _Kenny_, and _Miggins_ on the ground that, in those cases, "the affidavits did not just establish that the defendants were drug dealers, but contained overwhelming evidence that the defendants were major players in a large, ongoing drug trafficking operation." _Brown_, 828 F.3d at 383 n.2. Because the affidavit at issue in _Brown_ lacked such evidence, the Sixth Circuit found it inappropriate to infer that Brown's home would contain evidence of illegal activity, even though Brown had previously been arrested for drug trafficking. In the present case, the Court cannot conclude that the Search Warrant Affidavit contains "overwhelming" evidence that Brown was a "major player" in a "large, ongoing drug trafficking operation." (_See generally_ Search Warrant Affidavit.) The _Brown_-footnote exception does not obviously apply to Ardd.

Nevertheless, the Court will not overrule the Report's conclusion that the Search Warrant Affidavit provided sufficient information to conclude that, if Ardd were arrested for attempting to acquire cocaine, contraband or evidence of a crime would likely be found at Ardd's residence. _Brown_ itself notes "[t]he Fourth Amendment concern with protection from unreasonable intrusion in the home has resulted in a wide river of cases that courts have sought, sometimes in vain, to direct into tributaries that may be applied to comparable fact patterns," and that

"[m]ultiple cases on the nexus requirement reveal our struggle to provide guidance for such a fact-bound legal determination." 828 F.3d at 381–82.  Distinguishing Ardd's case from many others is the fact that the warrant was anticipatory, executable only if Ardd were arrested for trying to buy nine ounces of powder cocaine.  (Search Warrant Aff.)  The Court is aware of no Sixth Circuit caselaw addressing a reviewing official's ability to infer the presence of contraband in someone's home based on an affidavit for an anticipatory warrant whose triggering condition is one's arrest for trying to purchase drugs outside the home.

Under Illinois v. Gates, the official originally reviewing the Search Warrant Affidavit needed to "make a practical, commonsense decision" based on "all the circumstances set forth in the affidavit before him."  462 U.S. 213, 238 (1983).  As the Report discusses, some Sixth Circuit caselaw suggests that "'if there is probable cause to suspect an individual of being an ongoing drug trafficker, there is a sufficient nexus between the evidence sought and the individual's home.'"  (Report 14 (quoting United States v. Feagan, 472 F. App'x 382, 392 (6th Cir. 2012); see generally id. (citing Sixth Circuit cases).)

Brown puts the Feagan line of reasoning in question, at least where an affidavit does not provide "overwhelming evidence that the defendants were major players in a large, ongoing drug trafficking operation."  The Court need not resolve this tension

to decide this case.  This case concerns an anticipatory warrant and so differs from other Sixth Circuit cases about searches of drug dealers' residences.  The inference here was not from (1) <u>probable cause to suspect Ardd</u> of ongoing drug trafficking to (2) a nexus between the evidence sought and Ardd's home.  Once the warrant's triggering condition was met, the inference here was from (1) <u>Ardd's actual arrest</u> for ongoing drug trafficking to (2) a nexus between the evidence sought and Ardd's home.  Whether or not the first inference can support a practical, commonsense decision under Sixth Circuit law, the second can.[5]  Ardd's <u>Brown</u>-based objection is OVERRULED.

The Court ADOPTS Section II.A.1 of the Report to the extent it is consistent with this discussion.  The Court also ADOPTS Section II.A.1's conclusion that the search of Ardd's residence was supported by probable cause.

**D.  Section II.A.2 of the Report**

Section II.A.2 of the Report concludes that, "[e]ven if the court were to find that the search warrant was not supported by probable cause, the court would nevertheless conclude that the evidence discovered pursuant to the search should not be suppressed at trial, because the detectives' reliance on the war-

---

[5] That is particularly true because Ardd's home was searched on the day of his arrest, without delay.  That was not true in <u>Brown</u>, where the defendant was arrested and authorities waited more than three weeks to obtain a warrant to search his home. <u>Brown</u>, 828 F.3d at 380.

rant was objectively reasonable." (Report 19.) Ardd objects, arguing that "the good-faith exception is inapplicable in this case." (Objs. 6.)

Section II.A.2 of the Report begins by summarizing Sixth Circuit doctrine on the good-faith exception:

> The exclusionary rule is a "prudential doctrine" created by the Supreme Court to compel respect for the protections of the Fourth Amendment. "Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." The Court has "repeatedly held" that "the rule's sole purpose . . . is to deter future Fourth Amendment violations." After [<u>Davis v. United States</u>, 564 U.S. 229 (2011)] and [<u>Herring v. New York</u>, 422 U.S. 853 (1975)], "only police conduct that evidences a deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights may outweigh the resulting costs. By contrast, where police act with an objectively reasonable good-faith belief . . . exclusion cannot pay its way." As the Sixth Circuit [has] stated . . . :
>
>> Because the sole purpose of the exclusionary rule is to deter future Fourth Amendment violations, a criminal defendant must do more than demonstrate that the police violated the Fourth Amendment. He must show that suppressing the evidence will yield [r]eal deterrent value. That burden is especially relevant when officers follow the constitutionally preferred route, namely presenting evidence of illegal activity to a neutral magistrate who finds probable cause and issues a search warrant. To suppress the fruits of such a search,

> a defendant must show that, de-
> spite the magistrate's authoriza-
> tion, the police could not have
> relied on the warrant in good
> faith.

In [United States v. Leon, 564 U.S. 229
(2011)], the Supreme Court

> identified four specific situa-
> tions in which an officer's reli-
> ance on a subsequently invalidated
> warrant could not be considered to
> be objectively reasonable:
> (1) when the warrant is issued on
> the basis of an affidavit that the
> affiant knows (or is reckless in
> not knowing) contains false infor-
> mation; (2) when the issuing mag-
> istrate abandons his neutral and
> detached role and serves as a rub-
> ber stamp for police activities;
> (3) when the affidavit is so lack-
> ing in indicia of probable cause
> that a belief in its existence is
> objectively unreasonable; and,
> (4) when the warrant is so facial-
> ly deficient that it cannot rea-
> sonably be presumed to be valid.

(Report 19–21 (citations omitted).) Ardd does not object to the

standards stated here.

Ardd makes two arguments about why the good-faith exception

does not apply. First, he objects that the Search Warrant Affi-

davit contains false information. (Objs. 6.) The basis for

that argument is the purported discrepancy about the number of

confidential informants Detective Tellez used. (Id. at 6–7; see

also Section III.C supra.) As discussed above, Ardd's argument,

at best, suggests an innocent or negligent omission in the

Search Warrant Affidavit.  It does not suggest that Detective
Tellez knew (or was reckless in not knowing) that the Search
Warrant Affidavit contained false information.  The Court
OVERRULES this objection.

Second, Ardd objects that the Magistrate Judge failed to
take into account the Sixth Circuit's refusal to apply the good-
faith exception in Brown.  (Objs. 7 (discussing Brown, 828 F.3d
at 385–86)).  In Brown, the Sixth Circuit determined that the
affidavit for the relevant search warrant "was 'so lacking in
indicia of probable cause as to render official belief in its
existence entirely unreasonable.'"  828 F.3d at 386 (quoting
United States v. Carpenter, 360 F.3d 591, 595 (6th Cir. 2004)
(citation omitted)).  Brown is distinguishable.  Critical to the
Sixth Circuit's decision not to apply the good-faith exception
was that, after Brown's arrest, authorities waited more than
three weeks to search his residence.  Id. at 385.[6]  That circum-

---

[6] As the Sixth Circuit explained:

> Here, police arrested Brown on March 8 and
> seized his car –– registered to his resi-
> dence . . . –– on March 9. Although the po-
> lice obtained a warrant to search [another
> defendant's] residence the day after the ar-
> rest (in fact, just six hours later, at 3:10
> a.m.), they waited 22 days to file for a
> warrant to search Brown's residence.  It is
> hard to account for this delay, as little
> new evidence was discovered during that pe-
> riod . . . .  [That new evidence was not]
> probative of whether Brown was using his
> current residence for drug trafficking.  Ac-

stance does not apply here. Authorities searched Ardd's resi-
dence shortly after his arrest. For the reasons expressed in
Section III.C above, the Court does not agree that the Search
Warrant Affidavit was so lacking in probable-cause indicia as to
make belief in probable cause "entirely unreasonable." Once
Ardd had purchased nine ounces of cocaine from undercover po-
lice, the warrant's triggering condition, it was not "entirely
unreasonable" to infer that Ardd's residence might contain con-
traband or evidence of drug trafficking. The Court OVERRULES
this objection.

The Court ADOPTS Section II.A.2 of the Report.

**IV. CONCLUSION**

The Court ADOPTS Sections I.A, I.C, II.A.2, II.B, and II.C
of the Report. The Court ADOPTS Section I.B of the Report to
the extent consistent with the discussion in Section III.B

---

cordingly, if the police officers did not
think the evidence established probable
cause to search Brown's residence on March
9, when they sought and obtained the warrant
to search [the other defendant's] residence,
the record provides no reason to think their
assessment had changed by March 30. Agent
Fitch did not indicate in the affidavit that
the police ever surveilled Brown's home or
otherwise attempted any investigation re-
garding whether the residence was linked to
the alleged drug conspiracy. That would
seem to indicate that they did not believe
that it was.

Brown, 828 F.3d at 385.

above.  The Court ADOPTS Section II.A.1 of the Report to the extent consistent with the discussion in Section III.C above.  The Motion to Suppress is DENIED.

So ordered this 18th day of April, 2017.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE