```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```
_____

|                              |   |                      |
|------------------------------|---|----------------------|
| **UNITED STATES OF AMERICA,**| ) |                      |
|                              | ) |                      |
|    Plaintiff, | ) |                      |
|                              | ) |                      |
| v.                           | ) | No. 16-20094-SHM-tmp |
|                              | ) |                      |
| **NICKEY ARDD,**             | ) |                      |
|                              | ) |                      |
|    Defendant. | ) |                      |

_____

                    REPORT AND RECOMMENDATION
_____

On July 16, 2015, law enforcement officers with the Memphis Police Department ("MPD") arrested defendant Nickey Ardd after he allegedly purchased nine ounces of cocaine from undercover detectives who were posing as drug suppliers. At the time of Ardd's arrest, officers found a loaded Glock handgun tucked in his waistband. Later that day, officers executed a search warrant at Ardd's home and found, among other items, baggies of cocaine and marijuana, digital scales, and a Luger handgun with an obliterated serial number. On April 27, 2016, a federal grand jury returned a five-count indictment against Ardd, charging him with one count of possessing cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1), one count of carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A)(i), two counts of

being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

On September 22, 2016, Ardd filed a motion to suppress the evidence seized pursuant to the search warrant, as well as a signed statement he gave to the police after his arrest. (ECF No. 23.)  On November 15, 2016, the undersigned magistrate judge conducted an evidentiary hearing on the motion, and subsequently issued a Report and Recommendation.  (ECF No. 54.)  On April 18, 2017, the presiding district judge, adopting in part the Report and Recommendation submitted by the undersigned, issued an order denying the motion to suppress ("the Order").  (ECF No. 63.)  On April 21, 2017, the district judge conducted a status conference and set the case for trial on June 12, 2017.[1]  On May 23, 2017, Ardd filed two additional pre-trial motions.  (ECF Nos. 67, 68.) He seeks to suppress the cocaine he allegedly purchased from undercover officers on July 16, 2015.  He also seeks reconsideration of the Order, and for the first time requests a Franks hearing regarding the search warrant affidavit signed by Detective Harold Tellez of the MPD.  These motions are before the court by order of reference.  (ECF No. 72.)  On July 13, 2017, the undersigned conducted a second evidentiary hearing.

---

[1]The case is currently set for trial on August 14, 2017. (ECF No. 76.)

The court heard testimony from Detective Tellez and received into evidence three exhibits.

For the reasons below, it is recommended that both motions be denied.

## I. PROPOSED FINDINGS OF FACT

At the July 13, 2017 hearing, the parties did not submit any additional evidence as to the motion to suppress the narcotics beyond the documents attached to the motion. As to the motion for reconsideration, Detective Tellez gave limited testimony regarding the preparation of the search warrant affidavit and the search warrant return. The court finds his testimony to be credible. Based on Detective Tellez's testimony, the court makes the following findings of fact: On June 12, 2015, Ardd called a confidential informant who was acting as an intermediary between Ardd and Detective Tellez (who was posing as a drug supplier), to indicate that he (Ardd) wanted to purchase ounce quantities of cocaine from the detective. The informant then called Detective Tellez, who in turn called Ardd to set up the reverse buy on June 16. Although the search warrant was issued on June 15, 2015 and executed on June 16, Detective Tellez mistakenly wrote on the warrant return that the warrant was issued on June 16 and executed on June 17. Finally, Detective Tellez typed his own name – "Detective H. Tellez" - into the blank space on the search warrant designated

for identifying the law enforcement officer to whom the warrant was issued.

## II. PROPOSED CONCLUSIONS OF LAW

### A.  Motion to Suppress Controlled Substance

Ardd seeks to suppress the narcotics he allegedly purchased from undercover MPD officers immediately prior to his arrest on June 16. In support of this motion, Ardd attached an Affidavit of Complaint filed against him in Shelby County General Sessions Court (ECF No. 67-1), an MPD incident report (ECF No. 67-2), an MPD evidence report (ECF No. 67-3), and an Official Forensic Chemistry Report from the Tennessee Bureau of Investigation ("TBI") (ECF No. 67-4).[2] He alleges material discrepancies relating to the narcotics evidence between the Affidavit of Complaint, MPD police report, MPD evidence report, and the hearing testimony of Detective Tellez on the one hand, and the TBI report on the other hand. Specifically, Ardd points to the statement in the Affidavit of Complaint that the substance recovered from the reverse buy "tested positive for cocaine and weighed 254.6 grams TGW," the reference in the police report to nine ounces of "Cocaine (except Crack)," the reference in the MPD evidence report to 254 grams of cocaine, and the testimony of Detective Tellez at the first suppression hearing that he

---

[2]The incident report, evidence report, and Official Forensic Chemistry Report were admitted as Collective Exhibit 3 at the second evidentiary hearing.

checked out nine ounces of powder cocaine from the MPD evidence room to take to the reverse buy. Ardd contends that the reference in the TBI report to 244.5 grams of an "[o]ff-white rock like substance" creates a material discrepancy with the other reports and hearing testimony. Ardd argues that in light of this "extraordinary discrepancy" and "poor chain of custody procedures," "[t]he government should be compelled to present evidence to establish the veracity and preservation of the evidence to be presented in order to protect [Ardd's] due process rights. Otherwise, this substance should be suppressed and Count I of [the indictment] should be dismissed." (ECF No. 67 at 4.)

In response, the government contends that it has met its discovery obligations in this case. It points out that Ardd is free to examine the narcotics evidence prior to trial, and at trial can challenge the evidence the government seeks to admit against him. The court agrees. As an initial matter, the court finds that the documents presented by Ardd do not support any discrepancies that would remotely raise due process concerns. In any event, to the extent Ardd believes that the documents reflect material differences in the weight of the drug evidence, he may raise such concerns at trial. It is recommended that this motion to suppress be denied.

**B. Motion to Reconsider the Order Denying the Motion to Suppress**

In his motion seeking reconsideration of the Order, Ardd contends that "[n]ewly [d]iscovered evidence [r]eveals the [n]eed for a Franks [h]earing," and that the warrant was issued in violation of the Tennessee Rules of Criminal Procedure and violates due process. (ECF No. 68 at 1, 3.) In support of this motion, Ardd attached the search warrant and affidavit (ECF No. 68-1), the search warrant return (ECF No. 68-2), the state court Affidavit of Complaint (ECF No. 68-3), and Ardd's cell phone records.[3] (ECF No. 68-4.) Ardd argues his phone records demonstrate that the statement in the affidavit that "Ardd made contact by phone" with Tellez on June 12, 2015, is false. He also points out, as Detective Tellez admitted, that the dates listed on the warrant return are incorrect. He asserts these alleged defects demonstrate the need for a Franks hearing. He also contends the search warrant was invalid under Tennessee Rule of Criminal Procedure 41 because the name of the officer to whom the warrant was delivered for execution – Detective Tellez – was typed by the detective rather than handwritten by the issuing judicial officer.

---

[3] Ardd's phone records were admitted as Exhibit 1. The Exhibit consists of four pages of records attached to Ardd's motion as well as one additional page that the government requested to include.

1. <u>Franks</u>

Even though Ardd did not request a <u>Franks</u> hearing in his Motion to Suppress, the Order discussed the showing that a defendant seeking a <u>Franks</u> hearing must make. As the Sixth Circuit recently stated:

> there is a presumption of validity with respect to the affidavit supporting the search warrant. But, a search warrant is invalid when the supporting affidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth. <u>Franks</u> also applies to cases where an affiant intentionally omitted information in an affidavit, which is critical to the probable cause determination. A defendant may request an evidentiary <u>Franks</u> hearing if he raises a substantial question as to whether the affidavit supporting the search warrant contained materially false information. This requires making a substantial preliminary showing of knowing or reckless falsity. If the defendant is able to show deliberate falsity or reckless disregard for the truth, those portions of the affidavit are set aside, and the remaining content is analyzed to determine if it supports probable cause. Thus, the offending information must be essential to a probable cause finding. Innocent or negligent mistakes are not enough.

<u>United States v. Stone</u>, 676 F. App'x 469, 473 (6th Cir. 2017) (internal citations and quotation marks omitted). The district judge applied this standard in addressing Ardd's contention that Detective Tellez improperly referenced only one confidential informant in the affidavit even though he had utilized multiple confidential informants in the investigation of Ardd. The district judge concluded that "[a]t best, Ardd suggests an

-7-

innocent or negligent mistake" in the affidavit, and that "even if Ardd had made a showing of deliberate falsity or reckless disregard of the truth, no Franks hearing would be necessary because the statements in the Search Warrant Affidavit referring to a confidential informant did not refer to Ardd's home." (ECF No. 63 at 16, 17.)

Ardd now contends his cell phone records show that Detective Tellez called Ardd on June 12, 2015, and thus the statement in the affidavit that "[o]n June 12, 2015 Ardd made contact by phone" with Detective Tellez is false. As noted above, Detective Tellez testified that on June 12, 2015, Ardd called a confidential informant to indicate that he wanted to purchase ounce quantities of cocaine from the detective. The informant then called Detective Tellez, who called Ardd to set up the reverse buy. The court finds that this statement in the affidavit does not constitute a deliberate or reckless falsehood on the part of Detective Tellez, and furthermore the statement was irrelevant to the probable cause finding. The Order addressed the issue of probable cause at substantial length, emphasizing that "the warrant was anticipatory, executable only if Ardd were arrested for trying to buy nine ounces of powder cocaine." (ECF No. 63 at 21.) The inference supporting probable cause "was from (1) Ardd's actual arrest for ongoing drug trafficking to (2) a nexus between the evidence sought and

-8-

Ardd's home." (Id.) (emphasis in original). Accordingly, the question of whether Ardd called Detective Tellez on June 12, 2015, or vice-versa, is wholly immaterial to the finding of probable cause. Therefore, the motion for a Franks hearing should be denied.[4]

    2.    Tennessee Rule of Criminal Procedure 41

Tennessee Rule of Criminal Procedure 41 provides that "[t]he magistrate shall endorse on the search warrant the hour, date, and name of the officer to whom the warrant was delivered for execution."[5] Ardd asserts that this rule requires the issuing judicial officer to write the name of the law enforcement officer to whom the warrant is issued by hand on the warrant. Because, Ardd contends, Detective Tellez's name was typed by the detective, the warrant is invalid and the evidence

---

[4] Ardd also contends that the incorrect dates on the warrant return support his request for a Franks hearing. However, "the return of a warrant is a ministerial act and any failure therein does not void the warrant." United States v. Haskins, 345 F.2d 111, 117 (6th Cir. 1965) (citing Evans v. United States, 242 F.2d 534, 536 (6th Cir. 1957)). Ardd's argument that these discrepancies "further call the credibility of the officers, specifically Detective Tellez, into question" is also beside the point. The Franks standard centers on deliberate or reckless falsehoods in the affidavit that were essential to the finding of probable cause, not a more general inquiry into the credibility of the affiant. Ardd has not met this standard.

[5] At the time this warrant was issued, this requirement was contained in Tennessee Rule of Criminal Procedure 41(c)(2)(D). Effective July 1, 2015, Rule 41 was amended to allow warrants to be requested by electronic means, and what was Rule 41(c)(2)(D) became Rule 41(c)(3)(D).

seized during the search must be suppressed. This argument is not well-taken for several reasons. First, Ardd cites a number of Tennessee cases for the proposition that Tennessee courts strictly enforce the warrant requirements set forth in Tennessee Rule 41. However, none of those cases hold that Tennessee Rule 41 requires a judicial officer to handwrite the name of the law enforcement officer on the warrant, or that the law enforcement officer's placement of his or her name on the warrant renders the warrant invalid.

More importantly, even assuming *arguendo* that the warrant did not comply with Tennessee Rule 41, suppression of the evidence in this case is not warranted.[6] See United States v. Beals, 698 F.3d 248, 264 (6th Cir. 2012). Beals involved, among

---

[6]As an aside, the court notes that in 2011, Tennessee passed the Exclusionary Rule Reform Act, which provides that

> [n]otwithstanding any provision of law to the contrary, any evidence that is seized as a result of executing a search warrant issued pursuant . . . to Tenn. R. Crim. Pro. Rule 41 that is otherwise admissible in a criminal proceeding and not in violation of the constitutions of the United States or the State of Tennessee shall not be suppressed as a result of any violation of  . . . Tenn. R. Crim. Pro. Rule 41 if the court determines that such violation was a result of a good faith mistake or technical violation made by a law enforcement officer, court official, or the issuing magistrate as defined in subsection (c).

T.C.A. § 40-6-108(a). "[G]ood faith mistake or technical violation" is defined as "an unintentional clerical error or clerical omission made by a law enforcement officer, court official or issuing magistrate in the form, preparation, issuance, filing and handling of copies, or return and inventory of a search warrant." § 40-6-108(c)(1).

-10-

other things, a challenge to evidence seized pursuant to a warrant issued in violation of Tennessee Rule of Criminal Procedure 41(d). The government conceded that the failure of the issuing judicial officer to prepare an original warrant and two exact copies violated Rule 41(d), and that this violation would have required suppression in a state prosecution. Id. at 263. Nevertheless, the Sixth Circuit declined to suppress the evidence based on this violation of state law, explaining that

> [t]he commonly-held position is that federal, not state, law governs the question of the validity of a [state-issued] search warrant in a federal criminal proceeding. Similarly, in federal court, [the exclusionary rule] only requires the court to exclude evidence seized in violation of the Federal Constitution. That is because the exclusionary rule emanates from the Fourth Amendment, not state law[.] While the states are free to impose rules for searches and seizures that are more restrictive than the Fourth Amendment, those rules will not be enforced in a federal criminal proceeding. Therefore, [i]n determining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated. This rule promotes uniformity in federal prosecutions.
>
> Although no court to our knowledge has before addressed the precise question raised here, we find that the answer is squarely governed by the rule that only the Fourth Amendment (to the exclusion of state law) applies in federal prosecutions involving evidence seized by state officials. So long as the Fourth Amendment is satisfied, there is no basis for suppression . . .

Id. at 263-64 (internal citations and quotation marks omitted). Ardd's challenges to the search warrant grounded in Tennessee

Rule of Criminal Procedure 41 do not implicate the Fourth Amendment. Accordingly, even if Ardd were correct that Tennessee Rule 41 requires the name of the law enforcement officer to be written by hand by the judicial officer in the warrant, suppression of the evidence would not be warranted in this case.

### III. RECOMMENDATION

For the reasons above, it is recommended that both of Ardd's motions be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

July 26, 2017
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**